## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**DARRYLE POLLARD,**

     Plaintiff,

-vs-                          CASE NO. 1:18-cv-404
                                 HON. GORDON J. QUIST

**CITY OF MUSKEGON HEIGHTS,**
**BRANDON M. DEKUIPER,**
**MICHAEL T. EDENS, and**
**MICHAEL M. RATLIFF,**
**in their individual and official capacities,**

     **Defendants.**

| CHRISTOPHER TRAINOR & ASSOCIATES | PLUNKETT COONEY |
|---|---|
| CHRISTOPHER J. TRAINOR (P42449) | MICHAEL S. BOGREN (P34835) |
| SHAWN C. CABOT (P64021) | ROBERT S. CALLAHAN (P47600) |
| Attorneys for Plaintiff | Attorney for Defendants |
| 9750 Highland Road | 950 Trade Centre Way, Ste. 310 |
| White Lake, MI 48386 | Kalamazoo, MI 49002 |
| (248) 886-8650 | 269-226-8822 |
| (248) 698-3321-fax | 269-382-2506-fax |
| shawn.cabot@cjtrainor.com | mbogren@plunkettcooney.com |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

    **NOW COMES** Plaintiff, **DARRYLE POLLARD**, by and through his attorneys,

CHRISTOPHER TRAINOR & ASSOCIATES, and for his Response to Defendants' Motion for

Summary Judgment states the following:

    Plaintiff hereby denies each and every allegation contained in Defendants' Motion for the

reasons stated in the accompanying Brief and leaves Defendants to their strict proofs.

**WHEREFORE**, in light of the arguments, case law, and underlying evidence presented herein, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion in its entirety.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
Telephone: (248) 886-8650
Email: shawn.cabot@cjtrainor.com

Dated:  July 26, 2019
SCC/map

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2019, I electronically filed the attached paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: **all attorneys of record** and I hereby  certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: **None.**

/s/Shawn C. Cabot (P64021)
9750 Highland Road
White Lake, MI 48386
Phone: (248) 886-8650
shawn.cabot@cjtrainor.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**DARRYLE POLLARD,**

Plaintiff,

-vs-                                            CASE NO. 1:18-cv-404
                                                HON. GORDON J. QUIST

**CITY OF MUSKEGON HEIGHTS,**
**BRANDON M. DEKUIPER,**
**MICHAEL T. EDENS, and**
**MICHAEL M. RATLIFF,**
**in their individual and official capacities,**

**Defendants.**

| CHRISTOPHER TRAINOR & ASSOCIATES | PLUNKETT COONEY |
|---|---|
| CHRISTOPHER J. TRAINOR (P42449) | MICHAEL S. BOGREN (P34835) |
| SHAWN C. CABOT (P64021) | ROBERT S. CALLAHAN (P47600) |
| Attorneys for Plaintiff | Attorney for Defendants |
| 9750 Highland Road | 950 Trade Centre Way, Ste. 310 |
| White Lake, MI 48386 | Kalamazoo, MI 49002 |
| (248) 886-8650 | 269-226-8822 |
| (248) 698-3321-fax | 269-382-2506-fax |
| shawn.cabot@cjtrainor.com | mbogren@plunkettcooney.com |

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

Index of Authorities…………………………………………………………………....iii

Questions Presented……………………………………………………………....vi

Controlling/Appropriate Authorities ………………………………………............vii

I.      OVERVIEW…………………...………………………………………………1

II.     STATEMENT OF FACTS………………………………………………...2

III.    CORROBORATING FACTS………………………………………………...5

IV.     LEGAL ARGUMENTS…………………………………………………...9

        A.      Standard of Review………………………………………………………9

        B.      Defendants DeKuiper and Ratliff Clearly
                Used Excessive and Unlawful Force Against
                Plaintiff in Violation of His Fourth Amendment Rights..………………………..11

        C.      Defendant Edens Failed to Intervene on Behalf of
                Plaintiff to Prevent Defendants DeKuiper and Ratliff
                from Violating Plaintiff's Fourth Amendment Rights……………………….15

        D.      Plaintiff Has Established a Viable Monell Claim
                Against Defendant City of Muskegon Heights…………………………...16

        E.      Defendants Have Failed to Raise the Issue of
                Qualified Immunity and Have Waived Said Defense
                for the Purposes of Summary Judgment………………………………18

V.      CONCLUSION AND RELIEF REQUESTED………………………………..21

## INDEX OF AUTHORITIES

**Cases**                                                                                              **Pages**

*Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994)……………………………………………....10

*Anderson v. Creighton,* 483 U.S. 635 (1987)……………………………………………….20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………….10

*Barnhart v. Pickrel, Schaeffer & Ebeling Co.*,
    12 F.3d 1382, 1388-89 (6th Cir. 1993)……………………………………………....10

*Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015)……………………………………………..19

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365 (6th Cir. 2009)………………………………10

*Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir. 1989)………………………………………..20

*Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999)………………………………………………17

*Carpenter v. Bowling*, 276 F. App'x 423 (6th Cir. 2008)……………………………...12, 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………………....10

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)……………………………....…16, 17

*Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996)………………………………………16

*Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004)………………………………………….....11

*Durham v. Nu'Man*, F.3d 862 (6th Cir. 1996)………………………………………………15

*Graham v. Connor*, 490 U.S. 386 (1989)………………………………….…………vi, 11, 12

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006)………………………………17

*English v. Dyke*, 23 F.3d 1086 (6th Cir. 1994)………………………………………….....18

*Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009)……………………………………………20

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009)………………………………………………11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)……………………………………….…………....19

*Hope v. Pelzer*, 536 U.S. 730 (2002)………………………………………….……………20

*Kennedy v. Cleveland*, 797 F.2d 297 (6th Cir. 1986)……………………………………………18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………………..10, 19

*Matthews v. City of Toledo*, 2016 U.S. Dist. LEXIS 179842
         2016 WL 7474400 (N.D. Ohio, Dec. 2016)……………………….………………….14

*McDowell v. Rogers*, 863 F.2d 1302 (6th Cir. 1988)…………………………………………..11

*Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997)……………………………….…….vi, 11

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)………………………………...vi, 1, 16, 17

*Ontha v. Rutherford Cty.*, 222 F. App'x 498…………………………………………...vi, 15, 17

*Parker v. City of Detroit*, 2018 U.S. Dist. LEXIS 149686
         (E.D. Mich. Sept. 4, 2018)………………………………………………………………18

*Pearson v. Callahan*, 555 U.S. 223 (2009)………………………………………………....19

*Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011)…………………………………….11

*Saucier v. Katz*, 533 U.S. 194 (2001)………………………………………….......vi, 19, 20

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973……………………………………………….15

*Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167 (6th Cir. 2004)……………………….15

*Tolan v. Cotton*, 572 U.S. 650 (2014)………………………………………...........vi, 19

*United States v. Diebold*, Inc., 369 U.S. 654 (1962)…………………………………………10

## Rules

Fed. Rule Civ. Pro. 56……………………………………………………..............................9

## Statutes

42 U.S.C. § 1983……………………………………………………......................15, 16

<u>**QUESTIONS PRESENTED**</u>

I.      **Did Defendants DeKuiper and Ratliff Violate Plaintiff's Fourth Amendment Rights when they Used Excessive and Unlawful Force Against Plaintiff?**

      Plaintiff would answer:      "Yes."
      Defendants would answer:     "No."

II.     **Did Defendant Edens Fail to Intervene on Plaintiff's Behalf to Prevent Defendants DeKuiper and Ratliff from Violating Plaintiff's Fourth Amendment Rights?**

      Plaintiff would answer:      "Yes."
      Defendants would answer:     "No."

III.    **Did Defendant City of Muskegon Heights Cause or Contribute to a Violation of Plaintiff's Fourth Amendment Rights by failing to adequately train, supervise, or discipline its officers?**

      Plaintiff would answer:      "Yes."
      Defendants would answer:     "No."

## <u>CONTROLLING/APPROPRIATE AUTHORITIES</u>

*Graham v. Connor*, 490 U.S. 386 (1989)

*Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997)

*Saucier v. Katz*, 533 U.S. 194 (2001)

*Tolan v. Cotton*, 572 U.S. 650 (2014)

*Solomon v. Auburn hill Police Dep't*, 389 F.3d 167, 170-174 (6th Cir. 2004)

*Ontha v. Rutherford Cty.*, 222 F. App'x 498

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

## I.   <u>OVERVIEW</u>

On April 11, 2018, Plaintiff filed a Complaint **[D/E #1]** with this Honorable Court asserting two counts against Defendants Ratliff, DeKuiper, Edens, and the City of Muskegon Heights.  The Complaint centers on an incident between Plaintiff and the individual Defendants which occurred on April 19, 2016.  Count I is a Fourth Amendment Excessive Force/Failure to Intervene claim against Defendants Ratliff, DeKuiper, and Edens; and Count II is a *Monell* claim against Defendant City of Muskegon Heights.  For the reasons set forth herein, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety.

## II.   <u>INTRODUCTION</u>

In this case, Muskegon Heights police officers used completely unnecessary and unlawful force against a man who required the use of a cane to walk because he recently had surgery on his back.  On the morning of April 19, 2016, Plaintiff received a phone call from his daughter, who was crying and upset because she had argued with her boyfriend.  Plaintiff was concerned for his daughter's welfare, and so he drove over to her house.  Upon arrival at his daughter's house, her boyfriend began yelling at Plaintiff, to which he merely responded with purposeless speech.  In a completely excessive and unlawful response, Defendants DeKuiper and Ratliff lifted and shoved Plaintiff out of the side door of the house, slammed him against the side of the house and a truck parked nearby in the driveway, slammed him the ground, and put a knee into his injured back before handcuffing him.  Defendant Edens stood nearby as Defendants DeKuiper and Ratliff brutally tackled Plaintiff, and yet did nothing to stop or protect Plaintiff; despite having the clear means and ability to do so.  Defendants caused further damage to Plaintiff's already injured back, which required him to undergo further surgery on impaired discs in his spine.  As a result of the subject incident, Plaintiff suffered immense pain and suffering, the consequences of which he still

deals with to this day. Accordingly, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in its entirety.

## III.   <u>STATEMENT OF FACTS</u>

On the morning of April 19, 2016, Plaintiff received a phone call from his daughter, Destiny Kimble. **(Exhibit A, Plaintiff's Deposition, p. 52).** Ms. Kimble was upset and was crying because she had been having an argument with her boyfriend at the time, Demario Collins, and that he had "snatched her phone from her." **(Exhibit A, Plaintiff's Deposition, pp. 52-53).** At the time that Ms. Kimble called Plaintiff, she had already called the police, who had responded to her house on West Cleveland Avenue in Muskegon Heights. **(Exhibit A, Plaintiff's Deposition, p. 54).** Plaintiff decided to go over to his daughter's house in order to make sure that she was alright, and because he was worried that Mr. Collins may have harmed his daughter. **(Exhibit A, Plaintiff's Deposition, p. 55).** As Plaintiff pulled up to the house, he saw three (3) to four (4) police cars parked in front of the house on both Cleveland Avenue and Temple Street. **(Exhibit A, Plaintiff's Deposition, pp. 56-57).** Plaintiff parked at the end of the driveway to the side of the house behind Ms. Kimble's truck. **(Exhibit A, Plaintiff's Deposition, pp. 56-57; Exhibit F, Photo of Subject House).**

Plaintiff then grabbed his walking cane and approached the side door of the house. **(Exhibit A, Plaintiff's Deposition, pp. 55-56).** When Plaintiff came near the side door, he could hear through the wind that his daughter was still upset and crying. **(Exhibit A, Plaintiff's Deposition, p. 58).** Upon entering through the side door of the house, he immediately encountered Defendants Edens, who moved out of the way towards the basement steps, and DeKuiper, who was standing towards the bottom of the steps leading up into the kitchen. **(Exhibit B, Defendant Edens' Deposition, pp. 34-35; Exhibit E, Defendant DeKuiper's Deposition, pp. 27-28).**

Plaintiff and Defendants Edens and DeKuiper were crammed into the two (2) to three (3) foot wide entryway, with Defendant Ratliff stepped up higher on the nearby steps leading into the kitchen. **(Exhibit A, Plaintiff's Deposition, pp. 57, 59).** Defendant DeKuiper put his hand on Plaintiff's chest and asked him who he was, and Plaintiff told Defendants that he was Destiny's father and asked if he could talk to his daughter. **(Exhibit A, Plaintiff's Deposition, pp. 57, 59).** Defendants told Plaintiff to wait, which Plaintiff did. **(Exhibit C, Defendant Ratliff's Deposition, pp. 22-23).**

Then, Mr. Collins walked into the kitchen and yelled to Plaintiff, "what your old ass doing here, you ain't going to do shit." **(Exhibit D, Demario Collins' Deposition, pp. 18-19; Exhibit A, Plaintiff's Deposition, pp. 61-62).** In response, Plaintiff simply pointed at Mr. Collins and sarcastically said, "I'm gonna whoop your ass." **(Exhibit A, Plaintiff's Deposition, p. 62; Exhibit D, Demario Collins' Deposition, p. 19).** Plaintiff did not make any moves towards Mr. Collins, nor did he try to push up the stairs past Defendants DeKuiper and Ratliff. **(Exhibit A, Plaintiff's Deposition, pp. 62, 99; Exhibit D, Demario Collins' Deposition, pp. 19-20).** Furthermore, Mr. Collins also denies that he ever took any steps towards Plaintiff. **(Exhibit D, Demario Collins' Deposition, p. 21).** At that time, Defendants essentially had Plaintiff surrounded because Defendants DeKuiper stood immediately in front of him, Defendant Ratliff stood just beside/behind Defendant DeKuiper, and Defendant Edens stood just to Plaintiff's side. **(Exhibit A, Plaintiff's Deposition, p. 62; Exhibit E, Defendant DeKuiper's Deposition, pp. 27-28, 35).**

Even though Defendants had Plaintiff securely surrounded, after Plaintiff merely pointed and made a sarcastic verbal response to Mr. Collins, Defendants DeKuiper and Ratliff rushed Plaintiff without any warning and grabbed him by the arms, and then forcefully lifted and shoved

Plaintiff backward through the screen door to the driveway; and notably, the door was damaged so badly that it needed to be replaced. **(Exhibit A, Plaintiff's Deposition, pp. 68, 88; Exhibit G, Destiny Kimble's Deposition, p. 40; Exhibit C, Defendant Ratliff's Deposition, pp. 30-31).** Defendants Dekuiper and Ratliff then shoved and pushed Plaintiff out of the house; slammed his back against the house; and then slammed Plaintiff against Ms. Kimble's truck hard enough to dent and scratch her truck. **(Exhibit A, Plaintiff's Deposition, p. 68; Exhibit G, Destiny Kimble's Deposition, pp. 40, 58; Exhibit C, Defendant Ratliff's Deposition, pp. 32-34).** While in the house, Ms. Kimble could hear Plaintiff yelling and screaming in pain and saying, "my back, my back!" **(Exhibit G, Destiny Kimble's Deposition, p. 41).**

After Defendants had already slammed Plaintiff's back against his daughter's truck, Defendants DeKuiper and Ratliff began yelling at him to get on the ground. **(Exhibit A, Plaintiff's Deposition, p. 68; Exhibit G, Destiny Kimble's Deposition, pp. 41-45; Exhibit C, Defendant Ratliff's Deposition, pp. 32-33).** After Defendants DeKuiper and Ratliff started yelling at Plaintiff to get on the ground, Plaintiff told them that he could not get to the ground because of his back. **(Exhibit A, Plaintiff's Deposition, p. 68; Exhibit G, Destiny Kimble's Deposition, pp. 41-45, 48).** Defendants then slammed Plaintiff to the ground onto his stomach by kicking his legs out from under him, causing him to cry out in pain. **(Exhibit G, Destiny Kimble's Deposition, pp. 41-47; Exhibit A, Plaintiff's Deposition, pp. 104-106).** After Plaintiff was on the ground, he told Defendants that he had recently had surgery on his back, and Ms. Kimble told Defendants, "lift his shirt up, you can see the staples in his back." **(Exhibit A, Plaintiff's Deposition, pp. 68-69, 90-92; Exhibit G, Destiny Kimble's Deposition, pp. 44).** Despite being told about Plaintiff's back surgery, and the fact that Plaintiff was not resisting in any way, Defendant Ratliff put his

knee into Plaintiff's back and handcuffed his arms behind his back.  **(Exhibit G, Destiny Kimble's Deposition, pp. 41-45; Exhibit A, Plaintiff's Deposition, pp. 68-69, 90-92).**

Plaintiff was then transported via ambulance by Professional Med Team from the scene to Mercy Health Muskegon – Hackley Campus ("Mercy Muskegon").  **(Exhibit H, Pro Med Team Record, p. 1).**  Plaintiff was treated at the Mercy Muskegon Emergency Room for back pain after "he was in an altercation with police…was thrown around and slammed into a car…[and] also thrown against a house."  **(Exhibit I, Mercy Muskegon Records No. 1, p. 5).**  On May 9, 2016, Plaintiff consulted his neurology specialist, Dr. Rick Edgar, because he was experiencing increased pain due to the subject incident, including pain in both of his legs that goes "all the way down to his toes," and which was causing him to have "trouble walking having to use a walker because of how much pain he is in."  **(Exhibit J, Dr. Rick Edgar Medical Records, pp. 2-3, 5).**  On May 25, 2016, Dr. Edgar ordered an MRI of Plaintiff's back to check for further damage to his back, and prescribed Plaintiff aquatherapy.  **(Exhibit J, Neurological Records, p. 6).**  The MRI of Plaintiff's back revealed a "collapse of the L3-L4 discs," and Plaintiff was ordered to undergo an EMG.  **(Exhibit J, Rick Edgar Medical Records, p. 8).**  As a result of damages Plaintiff sustained when he was "tackled by police," Dr. Edgar observed pain and atrophy in Plaintiff's left leg, collapse of the L3-L4 discs, and a positive EMG for radiculopathy; therefore, Dr. Edgar recommended that Plaintiff undergo further surgery to extend the spinal construct put into Plaintiff's back in previous surgeries.  **(Exhibit J, Rick Edgar Medical Records, pp. 12).**  On November 17, 2016, Plaintiff did undergo surgery as recommended by Dr. Edgar as a result of damage done to Plaintiff's L3 and L4 discs.  **(Exhibit N, Mercy Health Muskegon Records No. 2, p. 1).**

IV.     **CORROBORATING FACTS**

A.      **Plaintiff's Deposition (Exhibit A):**

- He drove calmly to his daughter's house, and was not angry. **(p. 55).**

- He was using his walking cane at the time of the subject incident due to his back problems and recent back surgery.  **(pp. 57, 85, 101-102).**

- Plaintiff had his walking cane when he got out of the car and calmly walked from his car into the house through the side door.  **(p. 57).**

- He was not "hollering or screaming" at Mr. Collins.  **(p. 62).**

- Defendants DeKuiper and Ratliff slammed him into the house and the truck in the driveway as they yelled at him to get on the ground.  **(pp. 68-70).**

- Plaintiff told Defendants that he was not able to get on the ground.  **(p. 68).**

- He did not try to walk into the kitchen past Defendants DeKuiper and Ratliff.  **(pp. 62, 99).**

- After Plaintiff told Defendants that he had recently had back surgery, Defendant Ratliff put his knee into Plaintiff's back as he handcuffed him.  **(pp. 90-92).**

- His doctor told him that the subject incident had caused damage to two (2) discs in his back, and that they needed to be removed.  **(p. 101).**

B.      **Defendant Eden's Deposition (Exhibit B):**

- **Plaintiff did not act threateningly towards Defendants**.  **(p. 30).**

C.      **Defendant Ratliff's Deposition (Exhibit C):**

- After Plaintiff came inside the house through the side door, he asked to talk to his daughter, but was told to wait.  **(p. 23).**  *Plaintiff did follow the officer's directions.*

- Despite Plaintiff's unexpected arrival, Defendant Ratliff did not even reach towards his weapons when Plaintiff walked in and asked about his daughter's welfare.  **(p. 22).**

- When Plaintiff entered the house and asked if he could speak to his daughter, he seemed like a concerned father, and was not violent or threatening.  **(p. 22).**

- **As an officer on the scene, there was no reason to take Plaintiff to the ground.**  **(pp. 35-36).**

- He and Defendant DeKuiper did not have any problems handcuffing Plaintiff.  **(p. 34)**

- **It would have been unreasonable to take Plaintiff to the ground and place a knee into his back.**  **(pp. 35-36).**

- He applied handcuffs to Plaintiff.  **(pp. 34-35).**

- Defendant Edens was within a few feet of them as he and Defendant DeKuiper were handcuffing Plaintiff.  **(pp. 34-35).**

- He does not remember any officer telling Plaintiff to stop resisting.  **(p. 31).**

**D.**   **Demario Collins' Deposition (Exhibit D):**

- He started the verbal confrontation with Plaintiff when he yelled, "What's your old ass doing here.  **(pp. 18-19).**

- **Plaintiff stayed at the bottom of the stairs, and did not take any steps towards Mr. Collins.**  **(pp. 18-19).**

- He did not take any steps towards Plaintiff.  **(p. 21).**

- Defendants rushed Plaintiff.  **(pp. 21-23).**

- When officers grabbed Plaintiff to handcuff him, Plaintiff did nothing to resist, and "went along with it."  **(p. 22).**

**E.**   **Defendant DeKuiper's Deposition (Exhibit E):**

- There was no room for Plaintiff to move up the stairs into the kitchen.  **(pp. 27-28, 35).**

- **Plaintiff was not charged because he had been merely standing up for his daughter, and he had not taken actions to justify charges.**  **(pp. 49-50).**

- There was no reason for Defendants to take Plaintiff to the ground during the subject incident.  **(p. 42).**

- He does not recall that Defendants had any trouble handcuffing Plaintiff.  **(p. 40.)**

- He does not remember being trained on the use of force continuum when he was hired by Defendant City of Muskegon Heights.  **(p. 67).**

**F.**   **Photo of Subject House (Exhibit E):**

- This picture shows the side door out of which Defendants Ratliff and DeKuiper shoved Plaintiff, and the driveway where Ms. Kimble's truck would have been parked when they slammed Plaintiff into it.

**G.**   **Destiny Kimble's Deposition (Exhibit G):**

- She could hear her father screaming in pain from inside the house after Defendants DeKuiper and Ratliff lifted and shoved Plaintiff out the side door.  **(p. 41).**

- Plaintiff told them that he could not get to the ground because he had just had back surgery.  **(pp. 41-45).**

- **Plaintiff was crying from the pain as he told Defendants that he could not get on the ground because he had just had back surgery.** **(p. 48).**

- Defendants Ratliff and DeKuiper kicked Plaintiff's legs out from under him and slammed him on the ground.  **(pp. 41-47, 57).**

- **Even as Plaintiff continued to cry and scream from the pain, Defendant Ratliff put his knee into Plaintiff's back as he handcuffed him.**  **(pp. 41-42)**

**H.**   **Professional Med Team Report (Exhibit H):**

- Plaintiff reported to emergency medical personnel that he had been tackled by police. **(p. 3).**

- Plaintiff needed assistance to walk to the ambulance cot.  **(p. 3).**

**I.**   **Mercy Muskegon Medical Record No. 1 (Exhibit I):**

- Plaintiff was treated for increased pain in his back as a result of being thrown into a house and a car during an altercation with the police.  **(p. 5).**

- After Plaintiff received treatments of Toradol (a non-steroidal anti-inflammatory drug) and Norflex (a skeletal muscle relaxant) for the pain in his back caused by the subject incident, "he was able to get up and walk around."  **(p. 7).** *This obviously implies that prior to treatment Plaintiff was unable able to easily walk due to the pain in his back caused by the subject incident.*

**J.**   **Doctor Rick Edgar Medical Records (Exhibit J):**

- Plaintiff reported extreme pain and weakness as a result of being tackled by Defendants Ratliff and DeKuiper during the subject incident.  **(pp. 2-3, 5).**

8

- An MRI of Plaintiff's back showed damage to Plaintiff's L3-L4 discs as result of being tackled by Defendants Ratliff and DeKuiper.  **(p. 8).**

- An EMG performed on Plaintiff's left leg after the subject incident was positive for radiculopathy.  **(p. 12).**

- As a result of the damage Plaintiff received when he was tackled by Defendants Ratliff and DeKuiper during the subject incident, Dr. Edgar recommended Plaintiff to have another surgery on his back.  **(p. 12).**

**K.**     **Sergeant Scott Sinclair's Deposition (Exhibit K):**

- When Plaintiff entered the house during the subject incident, he did not hear any officers tell Plaintiff not to enter or to stay away.  **(p. 25).**

**L.**     **Officer Cory Kuklewski's Deposition (Exhibit L):**

- As an officer on the scene, he did not observe any reason to take Plaintiff to the ground during the subject incident.  **(pp. 30-31).**

**M.**     **Ramona Pollard's Deposition (Exhibit M):**

- Plaintiff went over to Ms. Kimble's house on the day of the incident because he was concerned for his daughter.  **(p. 26).**

- **As of April 19, 2016, Plaintiff was still using a case to assist in his walking.  (pp. 32-33).**

**N.**     **Mercy Health Muskegon Record No. 2 (Exhibit N):**

- Plaintiff underwent back surgery at Mercy Health Muskegon on November 11, 2016.  **(p. 1).**

**V.**     **LEGAL ARGUMENTS**

**A.**     **Standard of Review**

A motion for summary judgment brought under Federal Rule of Civil Procedure 56 is to be granted only where, considered in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  A defendant's motion for summary judgment requires the Court to look beyond the pleadings and

evaluate the facts to determine whether there is a genuine issue of material fact that must be evaluated by a jury. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The party seeking summary judgment bears the burden of showing the Court that there is an absence of a genuine dispute over any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must draw all reasonable inferences from the record "in the light most favorable to the party opposing the motion," and the Court may grant summary judgment only where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)). In reviewing a summary judgment motion, the Court may not make credibility judgments or weigh the evidence. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). When the nonmoving party presents direct evidence refuting the moving party's motion for summary judgment, the Court must accept that evidence as true. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). Ultimately, the Court must decide whether the evidence presented raises a sufficient disparity to submit to a jury or whether the issue is so one-sided that one party obviously prevails as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

In this case, there are clearly material facts in dispute and Defendants even admit as much. First of all the evidence shows that Plaintiff was lifted and shoved out of his daughter's house, slammed into the outside of the house and a nearby truck, then tackled and kneed in the back. Furthermore, Plaintiff clearly denies that he ever took any aggressive actions which could possibly justify Defendants' unlawful violence against him. Defendants deny that Plaintiff was ever on the ground and allege that Plaintiff attempted to push passed them, and that Plaintiff's actions justified their treatment of him. However, Plaintiff was in fact tackled to the ground. **(Exhibit G, Destiny**

**Kimble's Deposition, pp. 41-47; Exhibit A, Plaintiff's Deposition, pp. 104-106.)**  Clearly, as Defendants admit, material facts remain in dispute in this case, and therefore Defendants' Motion for Summary Judgment cannot be granted.

**B.    Defendants DeKuiper and Ratliff Clearly Used Excessive and Unlawful Force Against Plaintiff in Violation of His Fourth Amendment Rights**

The Fourth Amendment's prohibition of unreasonable seizures strictly limits the amount of force a police officer may use.  Specifically, a police officer may only use that degree of force necessary to complete the arrest.  *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).  "A claim of excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene," and the question is, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Relevant to the inquiry of reasonableness are the following factors: (1) the severity of the crime at issue; (2) the immediate threat the suspect poses to the safety of the officer(s) or others; (3) the suspect's resistance, if any; and (4) the possibility of flight.  *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004) (referencing *Graham*, 490 U.S. at 396).  Furthermore, long before this incident, it has been well established that **when someone has "been subdued such that they are not trying to flee and are not a threat to anyone, there is no need for force to be used."** *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) (*referencing McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)).

In the instant case, the facts clearly show that all of the factors established in *Graham* and its progeny favor Plaintiff.  First of all, Plaintiff had committed no crime at the time that Defendants DeKuiper and Ratliff lifted and shoved Plaintiff out of the house; and Plaintiff did not

11

receive any charges related to the subject incident.  **(Exhibit A, Plaintiff's Deposition, pp. 62, 99; Exhibit E, Defendant DeKuiper's Deposition, pp. 49-50).**  Secondly, Plaintiff presented no threat at all to any of the officers as he was a fifty-three (52) year old man with a painfully bad back who needed to use a cane to ambulate and was surrounded by three (3) police officers; and he never took any physical action at or towards anyone!  **(Exhibit A, Plaintiff's Deposition, pp. 5, 57, 62, 85, 99; Exhibit D, Demario Collins' Deposition, pp. 19-20).**  Thirdly, Plaintiff did not resist any of the Defendants at any time; and Plaintiff was crying in pain as he pleaded with the Defendants that he was physically incapable of getting on the ground as they demanded.  **(Exhibit A, Plaintiff's Deposition, pp. 68, 91; Exhibit C, Defendant Ratliff's Deposition, pp. 32-33).** Fourth and finally, Plaintiff did not attempt to flee and was demonstrably incapable of doing so, as he required the assistance of a cane just to walk.  **(Exhibit A, Plaintiff's Deposition, pp. 57, 85, 101-102).**

This case is remarkably similar to that of *Carpenter v. Bowling*, which involved a domestic dispute in which a woman was suddenly grabbed by the officer, shoved down the sidewalk, and slammed into the side of a car hard enough to put a dent in it.  *Carpenter v. Bowling*, 276 F. App'x 423, 426 (6th Cir. 2008).  **(see attached as Exhibit O).**  In that case, the plaintiff was merely in a verbal confrontation with another person over child custody, when the officer on the scene suddenly grabbed her by the arms then slammed and pinned her against a nearby van.  *Id*.  The Plaintiff in that case testified that she was not fighting or resisting arrest, and was continuously pleading for mercy by saying, "please don't do this. I will stand up. I will let you handcuff me." *Id*.  The officer in that case ignored the plaintiff's desperate pleas, and instead crushed her torso against the van while wrenching back on her arms until the plaintiff felt her shoulder pop.  *Id*.  The Sixth Circuit Court found that according to the facts alleged by the plaintiff, the *Graham* analysis

clearly weighed in her favor.  *Id*.  Specifically, the charge at issue was merely disorderly conduct; and although plaintiff raised her voice towards the other citizen, she made no move for them, and was otherwise non-resistant and posed no threat or risk of flight at all.  Ultimately the Court denied the officer's motion for summary judgment for that case because "[i]n view of the non-threatening nature of Carpenter's offense, the absence of any resistance by Carpenter and the absence of any threat to anyone, a jury crediting these fact-supported allegations could find that the officers used constitutionally excessive force."  *Id*.

In C*arpenter* the officer argued, just as Defendants do in the instant case, that the force that was used on the plaintiff was justified because of the "risk of escalation" that the officer faced.  *Id*. at 427.  The officer in *Carpenter* argued that because the plaintiff was "visibly upset," had "voiced her frustrations to the officers, and "had been previously accused of harassing" the other citizen, that their actions were a reasonable response to the threat of escalation.  *Id*.  However, as the Court stated, "virtually any arrest…poses a risk of resistance and escalation. The question is whether that risk was real at the time the officers used force and, more pertinently, whether a triable issue of fact exists over that risk."  *Id*.  Exactly as in this case, if a jury "credited [plaintiff's] factual allegations," the jury could find, "that the police had no basis for immediately grabbing, shoving, body slamming and repeatedly crushing [plaintiff] against a van to prevent the situation from escalating."  *Id*.

Defendants would have this Honorable Court find that simply being present at the scene of a domestic dispute alongside police officers puts someone at risk of being subjected to uses of force such as being shoved outside, slammed against a truck, slammed to the ground, and kneed in the back.  It appears as though Defendants assume that such an individual must accept the risks of being subjected to force in such a situation because of some undefined, generalized risk of

escalation regardless of whether any such escalation ever actually happened.  As the court in *Carpenter* found, such an assumption is completely adverse to the rights protected under the Fourth Amendment.  *See Matthews v. City of Toledo*, 2016 U.S. Dist. LEXIS 179842; 2016 WL 7474400 (N.D. Ohio, Dec. 2016) (Even if defendants believed (wrongly) that plaintiff was driving a stolen car, plaintiff did not resist and had the guns of multiple officer aimed at him; a jury could believe that an officer used excessive force when he yanked the plaintiff out of the car with such force as to cause injury to plaintiff's shoulder) **(See attached as Exhibit P).**

In addition, Defendants cannot show that any escalation was actually manifested, much less anything which could have justified the clearly excessive force used upon Plaintiff in the subject incident.  Plaintiff testified that he never took any steps towards Mr. Collins.  **(Exhibit A, Plaintiff's Deposition, p. 62).**  Mr. Collins also testified that Plaintiff did not take any steps towards Plaintiff.  **(Exhibit D, Demario Collins' Deposition, p. 21).**  Even if the two of them had a simple verbal exchange, there was no action taken by either of them which could lead a reasonable officer to conclude that they had any intention of carrying out any form of physical aggression against each other.  It is patently absurd that any reasonable officer could have believed that Plaintiff and Mr. Collins were escalating into physical violence because of simple, purposeless speech, and because Plaintiff merely pointed at Mr. Collins!

Furthermore, Defendants' reaction to any perceived "escalation" was clearly excessive and unlawful. Given the level of control that the officers, including Defendants, had over the scene, Defendants simply had no need to shove Plaintiff, slam him into a truck, slam him onto the ground, and put their knees into his back; thereby causing damage to Plaintiff's L3 and L4 discs.  At the very least, Defendants had Plaintiff fully in their control in the foyer when they surrounded him. Therefore, Defendants would have had no need to slam him into the house or truck, let alone tackle

the crying Plaintiff to the ground, and put a knee into his back; therefore, it is clear that Defendants Ratliff and DeKuiper's actions were clearly overly aggressive and unlawfully excessive. *see Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 170-174 (6th Cir. 2004) (plaintiff was fully compliant, and yet the officers grabbed the plaintiff's arms, shoved her against a display case; had plaintiff completely under control; and then one officer used such force upon the plaintiff's arm as to fracture her elbow).

According to the facts, law, and arguments contained herein, Defendants clearly used excessive and unlawful force upon Plaintiff in violation of Plaintiff's Constitutional rights. As such, this case must be tried by a jury. To that end, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion for Summary Judgment in its entirety.

**C.    Defendant Edens Failed to Intervene on Behalf of Plaintiff to Prevent Defendants DeKuiper and Ratliff from Violating Plaintiff's Fourth Amendment Rights**

Police officers can be held liable under §1983 for failing to perform their duty to prevent a violation of an individual's Fourth Amendment Right to be free from excessive force. *Durham v. Nu'Man*, F.3d 862, 867 (6th Cir. 1996) (quoting *Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973). The standard that a plaintiff must meet in order to succeed on a "failure to act" claim against an officer must demonstrate that a police officer "observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Ontha v. Rutherford Cty.*, 222 F. App'x 498, 506 (6th Cir. 2007) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

In the instant case, Defendant Edens himself admits that he stayed within a few feet of Plaintiff and Defendants DeKuiper and Ratliff from before they shoved plaintiff out of the side door of house, all the way through Plaintiff being handcuffed. **(Exhibit B, Defendant Edens' Deposition, pp. 24, 34-35, 38-40).** Defendant Edens even indicated that he stayed close enough

so that he could easily intervene to assist Defendants DeKuiper and Ratliff if that had been necessary.  **(Exhibit B, Defendant Edens' Deposition, pp. 38-40).**  Defendant Edens even went so far as to testify that "we got Pollard outside," which clearly indicates that he considered himself a part of the action.  **(Exhibit B, Defendant Edens' Deposition, pp. 38).**  Clearly, if Defendant Edens stayed close enough to assist Defendants DeKuiper and Ratliff, then he just as easily could have intervened on Plaintiff's behalf as well, and yet chose not to do so.  Therefore, Plaintiff has obviously alleged facts sufficient to satisfy the standard for a "failure to intervene" claim as to Defendant Edens.

As such, according to the facts, law, and arguments contained herein, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion for Summary Judgment in its entirety.

**D.**   **Plaintiff Has Established a Viable *Monell* Claim Against Defendant City of Muskegon Heights**

A governmental entity sued under § 1983 will be held liable for an employee's action not simply because of their employer-employee relationship, but because the employee acted "under color of some official policy," which caused the "employee to violate another's constitutional rights."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  *Monell* liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind an alleged deprivation of a plaintiff's rights. *Id.*; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). A municipality can also be held liable for inadequately training its officers when it "evidences a 'deliberate indifference' to the rights of its inhabitants…such a shortcoming [can] be properly thought of as city 'policy or custom' that is actionable under § 1983."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

A failure to establish a policy and/or train officers with respect to particular injury-causing

conduct rises to the level of deliberate indifference if the alleged constitutional violation was "closely related to" or "actually caused" by such a failure to train. *Id*. at 390-391. A plaintiff may demonstrate a "failure to provide adequate training in light of foreseeable consequences..." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-701 (6th Cir. 2006) (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)) (internal quotation marks omitted). The need for "more or different training [must be] so obvious that the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *Canton, supra* at 390. A plaintiff's *Monell* claim may survive summary judgment if facts can be provided to support a finding that the government's training program "is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur." *Ontha v. Rutherford County, Tennessee*, 222 Fed. App'x. 498, 504 (6th Cir. 2007).

In the present case, Defendant Muskegon Heights ("Defendant City") has undoubtedly demonstrated policies and/or practices which were totally deficient and which directly contributed to the violation of Plaintiff's Fourth Amendment rights. Present at the scene of the subject incident were five (5) Muskegon Heights police officers, including Sergeant Sinclair, and yet none of them seemed in any way concerned with the clearly excessive force that Defendants DeKuiper and Ratliff used upon Plaintiff. Defendants themselves now say that they do not recall seeing Plaintiff take any action which would justify tackling him to the ground. **(Defendant Ratliff's Deposition, pp. 34-36; Exhibit L, Officer Kuklewski's Deposition, pp. 30-31; Defendant DeKuiper's Deposition, p. 42).**

Furthermore, Defendant City expressly approved of Defendants' unlawful use of force when they declined to discipline them in any way for their actions in this case. **(Exhibit R, Citizen**

17

**Complaint Exoneration Letter).**  Defendant City made it clear that it considered it perfectly acceptable for its officers to use unnecessary and unlawful force by grabbing a completely innocent old man with a bad back and a cane, and slam him into a housing, a truck, and the ground; then knee him in the back just for the mere act of standing up for his daughter in an entirely verbal exchange.  **(Exhibit R, Citizen Complaint Exoneration Letter).**  When Defendant City of Muskegon Heights determined that Defendants had not used unreasonable force, they necessarily established that Defendants actions coincided with Defendant City's policies and practices regarding the appropriate use of force.  **(Exhibit R, Citizen Complaint Exoneration Letter).**  As such, Defendant City maintains a policy and/or practice regarding the use of force which encouraged Defendants to use unlawful and unreasonable force upon Plaintiff which far exceed the minimum necessary given a totality of the circumstances, which was in violation of Plaintiff's Fourth Amendment rights.

Based upon the facts, law, and arguments herein, Plaintiff respectfully requests that this honorable Court DENY Defendants' Motion for Summary Judgment in its entirety.

**E.    Defendants Have Failed to Raise the Issue of Qualified Immunity and Have Waived Said Defense for the Purposes of Summary Judgment**

Qualified Immunity "is an affirmative defense which must be affirmatively pleaded, and therefore, "failure to do so can work as a waiver of the defense.  *Kennedy v. Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986).  As such, a defendant's failure to raise qualified immunity in their motion for summary judgment effectively waives that defense at the summary judgment stage of the case. *English v. Dyke*, 23 F3d 1086, 1090 (6th Cir. 1994).  Lastly, parties should raise all of his arguments in support of summary judgment in a single motion, and not in a piece-meal fashion. *Parker v. City of Detroit*, 2018 U.S. Dist. LEXIS 149686, 4-6 (E.D. Mich. Sept. 4, 2018).  **(See attached as Exhibit Q).** As such, Defendants have failed to raise the affirmative defense of

qualified immunity in their Motion for Summary Judgment, and have therefor waived that issue.

Furthermore, even had Defendants properly raised the affirmative defense of qualified immunity in their Motion for Summary Judgment, Defendants would not have been successful. Defendants' actions were blatantly unreasonable and violated Plaintiff's clearly established Fourth Amendment rights. Based upon the facts and law contained herein, Defendants are not entitled to qualified immunity.

Qualified immunity is a privilege which protects government officials from liability arising out of their discretionary functions so long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court may grant summary judgment only where the record, taken as a whole in the light most favorable to the nonmoving party, could not lead a rational jury to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986). Courts have adopted a two-pronged approach to analyzing whether or not a defendant is entitled to qualified immunity at the summary judgment stage, and are not required to consider either prong in any particular order. *Pearson v. Callahan*, 555 U.S. 223 (2009). The first prong asks whether a "clearly established" right was violated. *Saucier v. Katz*, 533 U.S. 194 (2001). The second prong is whether the right asserted was clearly established at the time of the alleged violation. *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015). **<u>In performing this two-pronged analysis at the summary judgment stage, it is important that courts "[draw] inferences in favor of the nonmovant" from the "specific facts of the case."</u>** *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Saucier, supra,* at 201. While the plaintiff has the burden of showing that a right is clearly established, "the defendant carries the burden of showing

that the challenged act was objectively reasonable in light of the law existing at the time." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

If the legal question of immunity "is completely dependent upon which view of the facts is accepted by the jury," a jury must be given the opportunity to make that determination. *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).  It comes down to whether or not at the time of the incident the state of the law provided "fair warning" to the defendants that the conduct alleged by the plaintiff was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). A government official has been given "fair warning" that they have violated "clearly established law" if there is law which is sufficiently "particularized" to allow a reasonable officer to understand that "his conduct is unlawful in the situation he confronted." *Hope, supra*; *Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Saucier, supra.*

As of the date of the incident complained of, the law as to the causes of action asserted herein was clearly established, as discussed herein.  Furthermore, all of the facts upon which a qualified immunity defense would be based are in fierce debate.  As such, Defendants are not entitled to qualified immunity because the law in place at the time of the incident complained of shows that Defendants' actions were not reasonable.

## VI.    CONCLUSION AND RELIEF REQUESTED

In light of the evidence, arguments and law set forth herein, Plaintiff respectfully requests

that this Honorable Court deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
Telephone: (248) 886-8650
Email: shawn.cabot@cjtrainor.com

Dated:  July 26, 2019
SCC/map

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2019, I electronically filed the attached paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: **all attorneys of record** and I hereby  certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: **None.**

/s/Shawn C. Cabot (P64021)
9750 Highland Road
White Lake, MI 48386
Phone: (248) 886-8650
shawn.cabot@cjtrainor.com