UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYLE POLLARD,

      Plaintiff,

v.                                                                      Case No. 1:18-CV-404

CITY OF MUSKEGON HEIGHTS,                           HON. GORDON J. QUIST
BRANDON DEKUPER, MICHAEL
T. EDENS, and MICHAEL M. RATLIFF,

      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Darryle Pollard, has sued Defendants, the City of Muskegon Heights, Brandon M. DeKuiper, Michael T. Edens, and Michael M. Ratliff, pursuant to 42 U.S.C. § 1983. Pollard alleges that, in connection with an incident that occurred on the morning of April 19, 2016, Defendants DeKuiper and Ratliff used excessive force on Pollard in violation of Pollard's rights under the Fourth Amendment and that Defendant Edens failed to intervene to prevent DeKuiper and Ratliff from violating Pollard's rights. Finally, Pollard alleges a claim against the City pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

Defendants have filed a motion for summary judgment (ECF No. 42), arguing that they are entitled to judgment as a matter of law on all of Pollard's claims. Pollard has filed a response (ECF No. 47), arguing that the Court should deny the motion in its entirety. Because Defendants elected not to reply, the motion is fully briefed and ready for decision.

For the foregoing reasons, the Court will grant the motion in part and deny it in part. In particular, the Court will deny the motion with regard to Pollard's Fourth Amendment excessive force claims against Defendants DeKuiper and Ratliff and his failure to intervene claim against Defendant Edens and grant it with regard to the *Monell* claim.

## I. MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## II. FACTS

On April 19, 2016, Pollard received a call from his step-daughter, Destiny Kimble. Kimble was crying and told Pollard that her boyfriend, Demario Collins, with whom she was living, had "snatched her phone." (ECF No. 47-2 at PageID.276–77.) Kimble also told Pollard that she had called the police and that they were at the residence. (*Id.* at PageID.277–78.) Kimble and Collins had a history of domestic issues, including one occasion on which Collins choked Kimble during an argument concerning a truck. (ECF No. 43-3 at PageID.174.) Pollard was aware of Collins's mistreatment of Kimble and had previously spoken with Collins about his aggressive actions

toward her.  (*Id.* at PageID.175.)  Being concerned for Kimble's wellbeing, Pollard, who had recently had back surgery, grabbed his cane that he used to ambulate and drove to Kimble's residence at 504 W. Cleveland Street in Muskegon Heights.  (ECF No. 47-2 at PageID.278–79, 285.)

Because the matter involved domestic violence and Collins (who also called the police) reported (falsely) that Kimble had a knife, (ECF No. 43-3 at PageID.181), five police officers from the Muskegon Heights Police Department responded to the dispatch.  Officer Kuklewski and Sgt. Scott Sinclair arrived on the scene first in separate patrol cars.  (ECF No. 43-8 at PageID.230.) Officer Kuklewski entered the residence first, followed by Sgt. Sinclair.  Once inside, the officers separated Kimble and Collins, who were in the dining room, to talk to them.  Sgt. Sinclair took Collins into the kitchen and Officer Kuklewski remained in the dining room with Kimble.  (*Id.* at PageID.231–32.) Defendant DeKuiper, who arrived next, entered the house through the back door off the driveway.  The back door leads to a small mudroom, with steps down to the basement located straight ahead and three-to-five steps to the left leading up to the kitchen.  (ECF No. 47-3 at PageID.298.)  DeKuiper stood on the steps where he could see into the kitchen.  (ECF No. 43-1 at PageID.138–39.)  Defendant Ratliff, the next officer to arrive, stood on the steps above Defendant DeKuiper, with one foot on the top step even with the kitchen floor and one foot on the next step below.  (ECF No. 43-6 at PageID.211.)  Defendant Edens, the last officer to arrive, entered the back door and stood on the floor of the mudroom.  (ECF No.  43-5 at PageID.195.)

When Pollard arrived, he observed several police cars parked in the street in front of the residence.  Pollard parked his vehicle at the end of the driveway behind a truck that was parked four-to-five feet from the back of the house.  (ECF No. 43-1 at PageID.151; ECF No. 47-2 at PageID.280.)  Pollard grabbed his cane, walked to the back door, and entered the house.  Edens,

who was standing at the bottom of the stairs, moved toward the basement stairs to give Pollard room to enter.  (ECF No. 47-3 at PageID.300.)  At this point, Defendants and Pollard recount somewhat different versions of what occurred next.

### Defendants' Version

Pollard walked into the mudroom and asked to see his daughter.  (ECF No. 43-6 at PageID.213; ECF No. 47-3 at PageID.299.)  Defendants told Pollard "just to wait."  (ECF No. 43-6 at PageID.213.)  Almost immediately, Collins, who was in the kitchen, saw Pollard, and they began yelling at each other with raised voices.  (ECF No. 43-1 at PageID.140; ECF No. 43-5 at PageID.197; ECF No. 43-6 at PageID.215.)  Edens and DeKuiper told Pollard to stop yelling and leave the house, but Pollard continued to yell at Collins.  (ECF No. 43-5 at PageID.197.)  At that point, Pollard attempted to nudge past DeKuiper and Ratliff on the stairs in order to get to Collins and, in doing so, brushed against DeKuiper.  (ECF No. 43-1 at PageID.141; ECF No. 43-6 at PageID.216.)  In response, DeKuiper grabbed Pollard by the shoulders and, assisted by Ratliff, escorted Pollard out of the house.  (ECF No. 43-1 at PageID.143; ECF No. 43-6 at PageID.217.)  Edens followed DeKuiper, Ratliff, and Pollard outside.  (ECF No. 43-5 at PageID.202.)  Once outside, DeKuiper attempted to handcuff Pollard behind his back, but Pollard "squirm[ed]" or pulled away to avoid being handcuffed.  (ECF No. 43-1 at PageID.144; ECF No. 43-6 at PageID.218.)  During the scuffle, DeKuiper, Ratliff, and Pollard all hit the house and then hit the truck parked a few feet away.  (ECF No. 43-6 at PageID.219–20.)  DeKuiper and Ratliff eventually held Pollard against the truck to control and handcuff him.  (ECF No. 43-1 at PageID.144–45.)  Defendants then escorted Pollard to a patrol car, where Pollard informed them of his recent back injury or surgery, at which point Defendants handcuffed Pollard's hands up front.  (*Id.* at PageID.147.)

**Pollard's Version**

When Pollard entered the house, DeKuiper put his hand on Pollard's chest and asked Pollard to identify himself.  Pollard responded that he was Kimble's father.  (ECF No. 47-2 at PageID.281.)  Within a few seconds, Collins walked by the door, saw Pollard, and yelled to Pollard, "what your old ass doing here, you ain't going to do shit."  (*Id.* at PageID.286.)  In response, Pollard pointed a finger at Collins and told him, "I'm whooping your ass."  (*Id.*)  Pollard did not yell or scream at Collins and did not lunge at him or try to push up the stairs past DeKuiper and Ratliff.  (*Id.* at PageID.292; ECF No. 47-5 at PageID.314.)  None of the officers told Pollard to calm down or leave the house.  (ECF No. 47-2 at PageID.292.)  Instead, DeKuiper and Ratliff lifted Pollard and carried him outside.   (ECF No. 47-2 at PageID.286; ECF No. 47-8 at PageID.331.)  Once outside, DeKuiper and Ratliff slammed Pollard into the house and into the truck while repeatedly telling him to stop resisting and get on the ground.  (ECF No. 47-2 at PageID.287; ECF No. 47-8 at PageID.339.)  Pollard told Defendants that he could not get on the ground because of his back.  (ECF No. 47-2 at PageID.287; ECF No. 47-8 at PageID.333.)  The officers used a "leg sweep," or kick to Pollard's legs, to take Pollard to the ground but it did not work.[1]  (ECF No. 47-2 at PageID.296.)  Eventually, Defendants slammed Pollard to the ground.  (*Id.*)  After Pollard was on the ground, DeKuiper or Ratliff handcuffed Pollard by putting a knee in Pollard's back and pulling his hands behind him.  (*Id.* at PageID.289.)  While being handcuffed, Pollard told Defendants that he had recently had back surgery and was in pain.  (*Id.*; ECF No. 43-2 at PageID.169–70.)  Defendants then removed the handcuffs and placed them in the front.  (ECF No. 27-3 at PageID. 289.)  Pollard was taken by ambulance to a hospital, where he was treated for

---

[1] In contrast to Pollard, Kimble, who witnessed the scuffle outside, testified that Defendants kicked Pollard's legs twice to get him to the ground.  (ECF No. 47-8 at PageID.337.)

back pain.  Eventually, Pollard underwent additional surgery to repair damage done to his L3 and L4 discs as a result of the incident.

### III.  DISCUSSION

**A.     Excessive Force Claims**

A court must evaluate an excessive force claim under the Fourth Amendment's standard of objective reasonableness.  *Graham v. Connor*, 490 U.S. 386, 395–96, 109 S. Ct. 1865, 1871 (1989). This standard must be applied in light of the reality that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397, 109 S. Ct. at 1872.  Thus, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396, 109 S. Ct. at 1872.  In determining whether an officer's actions were reasonable, a court must examine the specific facts of the case.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citing *Graham*).  This entails "looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants."  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  "Relevant considerations in determining the reasonableness of force used are:  1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officers or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight."  *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009).

Because Defendants' motion requests summary judgment, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences."  *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).  Here, there are two conflicting versions of the facts, and the Court must accept

Pollard's version for purposes of assessing whether summary judgment is proper.  The issue then, is whether Pollard's version could support a jury finding that the force DeKuiper and Ratliff used on Pollard was unreasonable.

Applying the factors set forth in *Harris*, the Court concludes that a reasonable jury could find that the force used on Pollard was unreasonable.  First, Pollard had not committed a crime at the time DeKuiper and Ratliff shoved or rushed Pollard out of the house, and he was not subsequently charged with a crime.  Instead, Pollard and Collins, separated by at least two police officers, were yelling at each other.[2]  Moreover, according to Pollard, he did no more than point his finger at Collins and did not move towards Collins in any manner.  This factor or consideration suggests that the force used on Pollard was unreasonable.  *See Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006) (noting that "courts have found that the fact that a plaintiff in a § 1983 suit had committed no crime clearly weighed against a finding of reasonableness").  Second, there is no indication that Pollard presented a danger to the officers or others.  After entering the house, Pollard identified himself as Kimble's father and asked to see his daughter.  Eden and Ratliff both testified that Pollard did not act in a threatening or violent manner.  (ECF No. 47-3 at PageID.299; ECF No. 47-4 at PageID.306.)  Although Defendants argue that they were not aware whether Pollard was armed, they point to no evidence suggesting a reason to believe that he was in fact armed.  And, Pollard, who was recovering from back surgery and needed a cane to walk, was surrounded by several police officers who could have prevented an altercation between Pollard and Collins. Third, Pollard did not flee, and his physical condition made it unlikely that he was capable of doing so.  In fact, nothing in the record indicates that Defendants told Pollard that he

---

[2] DeKuiper and Ratliff both stood between Pollard and Collins, but were not the only officers available to restrain Pollard and Collins if necessary.  Edens stood next to Pollard on the floor of the mud room and Sgt. Sinclair was with Collins in the kitchen—available to restrain Collins in the event of an altercation.

was under arrest.  Defendants argue that, even under Pollard's version of events, he resisted being handcuffed and failed to comply with their orders to get on the ground.  (ECF No. 43 at PageID.125.)  But the evidence, viewed in a light most favorable to Pollard, indicates that he was not resisting but instead attempting to tell Defendants that he was in pain and was incapable of getting on the ground.  Finally, Defendants had other options.  For example, they could have ordered Pollard to leave the house to calm the situation, which Pollard testified they did not do. Whether Defendants' use of force on Pollard was objectively reasonable is thus a classic disputed issue for the jury.

Pollard argues, and the Court agrees, that this case is similar to *Carpenter v. Bowling*, 276 F. App'x 423 (6th Cir. 2008), in which the Sixth Circuit held that the evidence presented an issue of fact for the jury on the plaintiff's excessive force claim.  In *Bowling*, officers attempted to handcuff the plaintiff as she stood 30 to 40 feet away from the mother of her brother's child yelling at her.  *Id.* at 426.  The plaintiff alleged that the officers shoved her down to a sidewalk and slammed her into a van, even though the plaintiff told the officers that they were hurting her and that she would let them handcuff her.  The court found a triable issue of fact because the charge of disorderly conduct, for which the plaintiff was arrested, was not a violent or serious crime; the plaintiff did not pose a threat to the officers or to the child's mother because the plaintiff did not threaten or curse at her and never made a move toward her; and the plaintiff did not pose a flight risk and told the officers that she was not going to resist them.  *Id.*  The facts in the instant case are arguably more persuasive for finding an issue of fact because, unlike the plaintiff in *Carpenter*, Pollard had committed no offense.  Thus, "a jury crediting [Pollard's] fact-supported allegations could find that the officers used constitutionally excessive force."[3]  *Id.*

---

[3] As Pollard notes, Defendants do not argue in their motion that they are entitled to qualified immunity. Accordingly, the Court has no occasion to address that issue.

**B.      Failure to Intervene Claim**

Pollard argues that Edens is liable for standing by and failing to intervene to prevent DeKuiper and Ratliff from subjecting Pollard to excessive force.  To prevail on such claim, Pollard must show that Edens "'observed or had reason to know that excessive force would be or was being used' and 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess*, 735 F.3d at 475 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  To show that an officer had "the opportunity and means" to intervene to prevent the use of excessive force, a plaintiff must "demonstrate that the incident lasted long enough for [the defendant] to both perceive what was going on and intercede to stop it." *Id.*  When the duration of the incident is brief—"in a matter of seconds"—courts generally decline to impose a duty to intervene. *Ontha v. Rutherford Cty.*, 222 F. App'x 498, 506 (6th Cir. 2007).  The longer an incident lasts, the more likely it is that a court will impose a duty of intervention.  For example, in *Goodwin v. City of Painesville*, 781 F.3d 314, 329, the Sixth Circuit affirmed the denial of qualified immunity to a defendant who failed to take action during a 21-second tasering of the plaintiff.

Although the question is close, the Court concludes that Pollard's evidence suffices to create an issue for the jury.  There is no indication Edens had reason to know that DeKuiper and Ratliff would lift and force Pollard outside.  Pollard himself describes a quick turn of events.  (ECF No. 43-2 at PageID.160 ("I just pointed at him and I said, I'm whooping your ass.  And that's when everything got ballistic with the police. . . . They rushed me out the back door.").)  However, Pollard also testified that three minutes elapsed from the time Defendants "rushed" him out the back door to the time they got him on the ground, and Edens followed DeKuiper and Ratliff outside as they removed Pollard.  (*Id.* at PageID.168; ECF No. 47-3 at PageID.303.)  According to Pollard, once outside, DeKuiper and Ratliff slammed him into the truck and the house, while Pollard

repeatedly told the officers that he could not get on the ground.  Given this evidence, the Court concludes that an issue of fact remains as to whether Edens failed to intervene.

**C.     Municipal Liability**

In Count II of his complaint, Pollard alleges that the City is liable for the alleged excessive force because of some policy, practice, or custom of failing to train, supervise, or control its officers.  Defendants argue that Pollard's municipal liability claim must be dismissed because the City's police officers were adequately trained on the use of force and Pollard fails to present evidence establishing that the City was deliberately indifferent to the rights of its citizens.

Although a municipality is a "person" within the meaning of § 1983, it may not be held liable under a theory of *respondeat superior.  Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S. Ct. 2035–36 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S. Ct. at 2037–38.  To satisfy *Monell*'s requirements, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."  *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001).

The Supreme Court has recognized that a failure to train may constitute a municipal policy or custom under *Monell* "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989).  The Court explained the nature of the inquiry where a failure to train is alleged:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy or the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390–91, 109 S. Ct. at 1206 (internal citations omitted). Ordinarily, a plaintiff must present evidence of a pattern of similar violations to demonstrate deliberate indifference on a failure-to-train claim, for "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016) ("To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'") (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)); *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (rejecting the plaintiff's failure-to-train claim because the plaintiff failed to present any evidence of prior incidents of use of excessive force).

Here, Pollard fails to present evidence to create an issue of fact on his failure-to-train theory. First, Defendants have presented evidence that DeKuiper, Ratliff, and Edens all received training at police academies and were required to review the City's use of force policy at the time

they were hired.[4]  (ECF No. 43-1 at PageID.134; ECF No. 43-5 at PageID.191–92; ECF No. 43-6 at PageID.207–08.)   Moreover, Sgt. Sinclair testified that updates on the use of force from Michigan State Police bulletins are made available to all department employees by email.  (ECF No. 43-8 at PageID.227.)   Second, DeKuiper, Ratliff, and Edens all testified that they were unaware of any prior complaints or internal affairs investigations against them for use of force, (ECF No. 43-1 at PageID.133; ECF No. 43-5 at PageID.190; ECF No. 43-6 at PageID.206), and Pollard offers no evidence to refute their testimony.  Finally, and most important, Pollard puts forth no evidence of prior instances of unconstitutional conduct to show that the City was aware of the need for more training, such that it could be deliberately indifferent to the rights of its inhabitants.  The only evidence Pollard cites concerns the incident at issue in this case, which does not suffice to show deliberate indifference.  *Cf. Smith v. City of Akron*, No. 5:09-CV-02099, 2010 WL 3931104, at *5 (N.D. Ohio Oct. 6, 2010) (evidence of an after-the-fact complaint against an officer was insufficient to put the city "on notice of an inadequate training program or policy prior to the occurrence of the events at issue").

Finally, Pollard's failure-to-discipline theory of *Monell* liability is subject to the same fate as his failure-to-train theory.  Under a failure-to-discipline theory, the plaintiff must make a "showing of a history of widespread abuse that has been ignored by the City."  *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (citing *City of Canton*, 489 U.S. at 397, 109 S. Ct. at 1209).  As set forth above, Pollard fails to offer any evidence of widespread constitutional violations by the City's police officers.

---

[4] Defendants also state that the officers were MCOLES (Michigan Commission on Law Enforcement Standards) certified, but the deposition testimony they cite does not support this assertion.  Given that the officers have been hired by one or more Michigan law enforcement agencies, it is probably the case that they were MCOLES certified, but without evidence the Court will not assume this fact.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in part and deny it in part.

Therefore,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 42) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **granted** with regard to Pollard's *Monell* claim against the City and **denied** with regard to Pollard's excessive force claims against Defendants DeKuiper and Ratliff and Pollard's failure-to-intervene claim against Defendant Edens.


Dated:  October 22, 2019                                      /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE